Gelinas, J.
Pursuant to M.G.LA c. 231, §§108-110 and Dist/Mun. Cts. RA.D A., Rule 8C, plaintiff-appellant Peter Bogien, d/b/a Bomont Company (plaintiff), appeals from a District Court judge’s finding on all counts for defendant-appellees Richard Amistadi and Jon Delli Priscóli, d/b/a The Classic Corner (defendants), claiming error in the judge’s failure to find breach of warranty as the documentation delivered did not bear the proper serial numbers, breach of contract because of failure to deliver a completed certificate of title with assignment, and failure to provide plaintiff an assignment and warranty of title pursuant to M.G.L.A. c. 90D, §16. We affirm the Trial Court’s judgment and dismiss the appeal.
A review of the judge’s findings, his disposition of the Requests for Findings of Fact and portions of the record that are before us support the following judge’s findings and permissible inferences therefrom:
Plaintiff and defendants are both licensed Massachusetts used car dealers licensed under M.G.L.A c. 140, §59, engaged in buying and selling collector cars.
Sometime in January 1992 plaintiff met with the defendants at their place of business in Templeton, Massachusetts to inspect various collector cars that the defendants had for sale. As a result plaintiff agreed to purchase several vehicles, including a 1969 Dodge Charger Daytona, the vehicle subject of this action.
Prior to the sale plaintiff met with defendant Richard Amistadi to finalize details of the transaction. At that meeting defendants provided and plaintiff reviewed documentation relative to all vehicles then being purchased. Included in the documentation reviewed with respect to the Daytona were the following:
1. “Automobile Sales Order” for a “New 69 Charger Daytona XX29L9B409031”.
2. “State of Oklahoma Certificate of Title of Vehicle” dated 10/4/69 listing the identification number as XS29L9B409031.
3. “Application for Missouri Title and/or License Original” listing vehicle identification number as XS29L9B409031.
4. “State of Missouri Certificate of Title” in the name of Jake H. Diemer, bearing the vehicle identification number XS29L9B409031 assigned in blank.
Satisfied with the documentation, plaintiff gave the defendants a personal check for $65,000.00 in payment for all of the vehicles and took immediate delivery of the Daytona, taking the vehicle to his home. The parties agreed that all documentation for the vehicles purchased would be held by the defendants until plaintiff’s check cleared. Plaintiff further requested and defendants agreed that the Missouri title to the Daytona be left open, i.e. that the assignment portion of the Missouri certificate of tide be left blank. There is no evidence whatsoever to suggest that plaintiff reserved any rights with respect to the documents at the time payment was ren *73 dered.
Plaintiff’s check cleared and defendants then sent plaintiff all documentation previously reviewed by plaintiff together with a bill of sale and an official odometer statement for the Daytona.
In April of 1992 plaintiff attempted to sell the vehicle at a classic car auction in South Carolina. The plaintiff withdrew the vehicle from the auction when no one offered a satisfactory bid.
In June of 1992, while attempting to sell the vehicle at auction in Oklahoma, plaintiff learned that the Vehicle Identification Number (VIN) on the 1969 Oklahoma certificate of title and the 1985 Missouri certificate of title bore the prefix “XS.” This discovery by a bidder led to retraction of the bidder’s offer of $50,000 to purchase the vehicle. The VINs affixed to the Daytona in numerous locations bore the prefix “XX” as did the VINs contained in other documentation.
There is no evidence to suggest and the judge did not find that either plaintiff or defendants were aware of the defect in the documents at the time of negotiation, review, sale or delivery of the vehicle and documents to the plaintiff.
All Dodge Daytonas were constructed by the Chrysler Corporation as a model known as Dodge Charger RT. Some Charger RTs were then modified by an independent customizer for Chrysler prior to delivery to dealerships. When these vehicles left the Chrysler factory for modification their VINs bore the prefix “XS.” The independent customizer would then make modifications necessary to convert the RT into a Daytona; these modifications included the addition of an elongated nose, a changed rear window, installation of an air spoiler on the rear of the vehicle and the addition of “Daytona” decals. The independent customizer would also change the VINs affixed to the vehicle to bear the ‘XX” prefix, and would provide documentation authenticating the VINs and work done. The vehicles were then returned to Chrysler for sale by it, with Chrysler modifying other documents to reflect the “XX” designation. In this instance some of the documents continued to bear the ‘XS” prefix.
The evidence supports and the court found that the vehicle itself was an authentic Daytona, with the correct “XX” prefix on the VINs attached to various parts of the vehicle. At the time of sale to the plaintiff in January of 1992, a Daytona had a value of between $40,000 and $60,000, and of the purchase price paid by plaintiff $40,000 was assigned to the purchase of the Daytona. The value of a 1969 Dodge Charger RT without modification was in 1992 between $8,000 and $10,000.
Upon being notified of the conflict in the documentation defendants offered to cure the title defect by obtaining a new, proper certificate of title, provide a letter of authenticity from a nationally recognized expert as to the vehicle’s pedigree and reimburse plaintiff $1,000 for expenses. Plaintiff did not accept this offer.
As both plaintiff and defendants were dealers and in fact holding the vehicles for resale, neither was under any obligation to obtain a title in the Commonwealth. M.G.LA c. 90D, §2 (a) (2) exempts dealers by providing in relevant part:
(a) No certificate of title need be obtained for:... (2) a vehicle owned by a manufacturer or dealer and held for sale... (emphasis supplied)
Plaintiff was additionally exempt from the requirement of obtaining a Massachusetts certificate of title. M.G.LA c. 90D, §4(a) exempts purchasers of vehicles described in M.G.L.A. c. 90D, §2 from the statutory requirement.
The provisions of M.G.LA c. 90D, §15(a), relative to transfer of title for a vehicle apply only to a certificate of title issued under the provisions of M.G.LA c. 90 and are of no relevance to the transaction between these parties.
While not referring specifically to certificates of title issued under M.G.LA C.90D, the provisions of M.G.LA c. 90D, §16 would also appear inapplicable, as acquiring dealers are exempt under M.G.LA c. 90D, §4 from the titling requirement, as is a dealer holding vehicles. There was no requirement to obtain a Massa *74 chusetts certificate of title as a prerequisite to transferring ownership of the Daytona, either by the defendants or the plaintiff, both being licensed dealers selling and purchasing for resale.
Even assuming the transaction subject to the provisions of M.G.L.A. c. 90, §16 the Missouri certificate of title was reviewed by plaintiff prior to his payment and the lack of assignment was obvious in its face; plaintiff specifically requested that the assignment portion be left blank, and reserved no rights with respect to this document in making payment against it and cannot now claim failure of the sale by virtue of the blank assignment portion.
Physical delivery of the Daytona was made to the plaintiff prior to the delivery of the historical documentation and the bill of sale. TTie transaction contemplated both delivery of the vehicle itself and delivery of the documentation, and plaintiff made payment against the documentation after his review.
The trial judge found and the evidence clearly supports a finding that the vehicle itself conformed to the agreement. The vehicle identification numbers were appropriate, bearing the “XX” prefix of a Dodge Daytona. The modifications were genuine. No breach occurred with respect to delivery of the vehicle itself.
With respect to the attendant documents, their transfer is governed by M.G.L.A c. 106, §2-605(2), which provides
payment against documents made without reservation of rights constitutes a waiver of defects on the face of the documents.
In this case the documents when read in their entirety and when compared with the VINs on. the vehicle revealed on their face a discrepancy in the VIN prefixes and further revealed a blank assignment on the Missouri certificate of title which plaintiff expressly requested be left blank. Both were defects apparent on the face of the documente. Plaintiff failed to reserve any rights with respect to the documents and made payment after a full review. The documents were not delivered to plaintiff without requiring payment from him but in fact were retained until plaintiffs check had been negotiated. Delivery of the documents required the contemporaneous payment by the plaintiff, thus removing any consideration of acceptance under M.G.L.A c. 106, §2-606. The trial judge’s findings, amply supported by the evidence, reveal no breach of contract, no breach of warranty and no requirement of compliance with M.G.LA. c. 90D, §16.
The judgment of the trial court is affirmed and the appeal is dismissed.